IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS, HELPERS, AND HANDLERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 211,<br><br>Plaintiff,<br><br>vs.<br><br>PG PUBLISHING CO., INC. d/b/a/ PITTSBURGH POST GAZETTE,<br><br>Defendant. | Civil Action No.   19-1472<br><br><br><br>COMPLAINT |

## **VERIFIED COMPLAINT (INJUNCTIVE RELIEF SOUGHT)**

AND NOW COMES Plaintiff, Newspaper, Newsprint, Magazine, and Film Delivery Drivers, Helpers, and Handlers, International Brotherhood of Teamsters, Local Union No. 211, by and through their undersigned counsel, Jubelirer, Pass & Intrieri, P.C. and files this Complaint against Defendant, PG Publishing Co. Inc., d/b/a Pittsburgh Post-Gazette, in support of which, Plaintiff avers the following:

## **INTRODUCTION**

1. This is an action involving a breach of contract seeking a permanent injunction pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947, as amended , 29 U.S.C. §185 (a). This action seeks to preserve the status quo pending the outcome of a contractual grievance process and arises out of, amongst other breaches, Defendant's refusal

to provide health insurance to its employees and Defendant's denial of guaranteed jobs and pay to its employees as mandated under the terms of the parties' collective bargaining agreement.

## PARTIES

2.     Plaintiff, Newspaper, Newsprint, Magazine, and Film Delivery Drivers, Helpers, and Handlers, International Brotherhood of Teamsters, Local Union No. 211 (hereinafter referred to as "Union") is the certified exclusive labor representative of a bargaining unit of employees employed by Defendant. The Union is a "labor organization" in an industry "affecting commerce" within the meaning of 29 U.S.C. 152 and 29 U.S.C. §185 (a).

3.     Defendant, PG Publishing Co. Inc., d/b/a Pittsburgh Post-Gazette (hereinafter referred to as "Post-Gazette" or "Company") is a corporation organized and operating under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 2201 Sweeney Dr., Clinton, PA 15026. The Post-Gazette is an "employer" in an industry "affecting commerce" within the meaning of 29 U.S.C. §152 and 29 U.S.C. §185 (a).

## JURISDICTION AND VENUE

4.     This court has federal question jurisdiction under 28 U.S.C. §1331 because this action arises under Section 301(a) of the LMRA, 29 U.S.C. §185 (a).

5.     Venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1391 and 29 U.S.C. §185 because Defendant's principal place of business is located in this district, Plaintiff's principal place of business is located in this district, and the events giving rise to this claim occurred in this district.

## FACTUAL ALLEGATIONS AND CLAIM

### COUNT 1—Breach of Contract and Status Quo Injunction – 29 U.S.C. §185(a)

2

6. Plaintiff and Defendant are parties to a collective bargaining agreement (hereinafter referred to as the "CBA") governing the terms and conditions of employment for a bargaining unit of employees employed by Defendant. A true and correct copy of the parties' CBA is incorporated by reference and attached hereto as Exhibit A.

7. The CBA is a "contract" between an employer and a labor organization within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185 (a).

8. The CBA expired by its own terms on March 31, 2017.

9. While in the process of negotiating a successor agreement, the parties are operating under the terms of the CBA and the parties are statutorily required to maintain the status quo of that agreement while negotiations are ongoing under the National Labor Relations Act. 29 U.S.C. §§151 et seq.; *NLRB v. Katz*, 369 U.S. 736 (1962); *Laborers Fund v. Advanced Lightweight Concrete*, 484 U.S. 539, fn. 6 (1988).

10. Amongst other terms and conditions of employment, the CBA requires the Post-Gazette to provide health insurance benefits to its employees. (Exhibit A, CBA, Section I (18) at pp. 15-20, Appendix C at pp. 57-61).

11. The CBA also mandates:

> "The Union and the Company **shall meet** prior to a bump and **must mutually agree to any changes** that reflect operational needs. **Any reductions in schedules or routes shall not be permitted to cause a reduction in the number of employees in the Transportation Department**. These employees who are displaced by the reduction referenced herein **shall become substitute drivers** or transferred into another department within Local 211 jurisdiction." (Exhibit A, CBA, Section III (3) (A) at p. 33). (emphasis added).

12. The CBA also provides that substitute drivers which Defendant employs must be employed by Defendant for a minimum of five days per week during any year Defendant employs such substitute employees. (Exhibit A, CBA, Section (I) (16) at p. 13).

3

13. In addition, the CBA provides that:

> "It is understood that the Company has the right to open, change, adjust, split, combine and/or close territories, provided it is done for valid business reasons and is not arbitrary or capricious, **and further provided that no employee shall suffer a loss of wages for the six months immediately after the change** nor as a result thereof be caused to work additional overtime as a result of the Company's actions." (Exhibit A, CBA, Section IV (2) at p. 37). (emphasis added).

14. The CBA also sets forth a rather extensive dispute resolution procedure. (Exhibit A, CBA, Section I (10) at pp. 8-10).

15. Under the terms of the CBA, the Defendant is contractually obligated to process grievances when Plaintiff exercises its right to submit unresolved grievances for resolution.

16. The contractual dispute resolution mechanism further provides that the status quo be maintained during the pendency of any grievance with limited exceptions. That provision expressly states:

> "During the processing of any grievance, business shall be continued without interruption in a normal and orderly manner **and the matter or matters in dispute,** except cases of layoff for reasons of economy or cases of discipline resulting from a serious offense **shall revert to the status quo prevailing immediately prior to the time the grievance arose until a final decision of the matter or matters at issue shall have been reached.** Status quo is in effect for the entire Agreement. Whenever either party has express rights spelled out in the Agreement, status quo does not apply. We mean clear and unambiguous language granting or reserving express rights." (Exhibit A, CBA, Section I (10) (H) at p. 9). (emphasis added).

17. On September 11, 2019, the Post-Gazette provided the Union with a proposal seeking to change significant portions of the parties' agreement. A true and correct copy of this proposal is incorporated by reference in the Molinero Affidavit filed herein as Exhibit B and attached thereto as Exhibit 1 of said Affidavit.

18. On September 30, 2019, the Post-Gazette eliminated two days of print and announced the closure of the company's Sharpsburg Distribution Center.

19. On October 1, 2019, counsel for the Post-Gazette sent a letter to the undersigned purporting to be the Post-Gazette's "Best and Final Offer" with respect to bargaining over the proposed changes. A true and correct copy of that proposal is attached to Molinero Affidavit as Exhibit 2.

20. The "proposals" included the following:

   a. Eliminating healthcare coverage for dozens of workers;
   b. Changing employee work schedules without agreement of the Union;
   c. Eliminating guaranteed hours worked and corresponding pay for substitute workers;
   d. A layoff of 19 Union employees in the Circulation Department for non-economic reasons; AND
   e. A layoff of 11 Union employees in the Transportation Department for non-economic reasons.

21. On October 3, 2019, the Union responded to Defendant's correspondence and offered to meet and bargain on October 7, 2019.

22. The Union and the Post-Gazette met and conferred on October 7, 2019. At that meeting, the Union offered a counterproposal.

23. In response, the Post-Gazette sent Union's counsel what it called an "Effects Bargaining Summary" by email dated October 9, 2019. In that correspondence, the Company categorically rejected every one of the Union's proposals and offered no compromise. A true and correct copy of that summary is attached to Molinero Affidavit as Exhibit 3.

24. The Union's counsel responded by email dated October 9, 2019 clarifying the numerous significant issues the Company had refused to negotiate or discuss with the Union in

violation of the CBA and the National Labor Relations Act. A true and correct copy of that proposal is incorporated and attached to Molinero Affidavit as Exhibit 4.

25. Despite the Company's failure to engage in good faith bargaining, and despite the fact that there was no mutual agreement to the changes proposed, the Company proclaimed its intention to change schedules and unilaterally implement the changes it had proposed by email dated October 15, 2019, which were no different than its original September 11, 2019 proposal, all in flagrant violation of Section I (10) (H) of the parties' agreement. A true and correct copy of this proposal is incorporated by reference and attached as Molinero Affidavit as Exhibit 5.

26. As a result of these unilateral changes, dozens of Union members will lose their health insurance, dozens of employees will be laid off, dozens of employees will be denied their guaranteed hours of work and corresponding pay, and dozens of employees' shifts will be changed in blatant violation of the terms of the CBA.

27. More specifically, as a direct result of Defendant's refusal to maintain the status quo pending resolution of Plaintiff's grievance, 30 employees will be laid off—11 in the transportation department and 19 in the circulation department.

28. During over two and a half years of negotiations, the Union repeatedly asked the Post-Gazette if the layoffs were due to economic reasons.

29. In response, the Post-Gazette repeatedly denied that the layoffs were due to economic reasons instead insisting that the layoffs were due to a restructuring in the delivery and distribution of its product. The Post-Gazette has petulantly refused to provide any financial data to the Union during the course of negotiations.

30. As a direct result of Defendant's refusal to maintain the status quo pending resolution of Plaintiff's grievance, 29 of the remaining 33 Union employees in the Circulation Department will lose their contractually guaranteed healthcare coverage.

31. As a direct result of Defendant's refusal to maintain the status quo pending resolution of Plaintiff's grievance, 20 of the remaining 28 Union employees in the transportation department will lose their contractually guaranteed healthcare coverage

32. As a direct result of Defendant's refusal to maintain the status quo pending resolution of Plaintiff's grievance, substitute employees will no longer be afforded their contractual guarantee of hours of work and wages.

33. As a direct result of Defendant's refusal to maintain the status quo pending resolution of Plaintiff's grievance, employees in the circulation department will not continue to receive their same rate of pay for six months after the change as required under the parties' contract.

34. The Union has not agreed to any of the Company's proposed changes, even though the contract requires mutual agreement of the Company and the Union when schedules are changed.

35. On November 4, 2019, the Union filed a grievance challenging the Post-Gazette's unilateral changes as a violation of the parties' CBA. A true and correct copy of the grievance is incorporated by reference and attached to Molinero Affidavit as Exhibit 6.

36. In its grievance, the Union requested the Post-Gazette maintain the status quo pending the resolution of the grievance through the grievance procedure.

37. The Employer has improperly and unlawfully refused to maintain the status quo regarding healthcare and wages.

38. Unless this court issues an injunction enjoining and restraining the Post-Gazette from refusing to maintain the status quo, and directing the Post-Gazette to maintain the status quo, the grievance procedure contained in a Section I (10) of the CBA will be rendered meaningless.

39. Absent an injunction from this court, the grievance procedure will not be able to provide an adequate remedy and thus the Union's members will suffer irreparable harm.

40. More specifically, in the absence of an injunction issued by the Court, the Union and its members will be irreparably harmed by losing healthcare coverage, being forced to forego necessary medical treatment or pay for health insurance and prohibitively expensive yet necessary medical procedures, loss of their jobs and livelihood, loss of wages, and changes in their work schedules.

41. The Union and its members do not have an adequate remedy at law.

42. In the absence of injunctive relief, any resulting resolution achieved through the contractual grievance procedure would be rendered a hollow formality because it will be unable to return the parties to the status quo existing prior to the Post-Gazette's contractual violations.

43. Without an injunction maintaining the status quo, the Union and its members will be harmed to a greater degree than Defendant will be harmed if an injunction is issued.

44. The public interest will be advanced by issuing injunctive relief because it will encourage industrial peace, ensure that the grievance process is not frustrated, and ensure any resulting resolution is not rendered a hollow formality.

45. The failure of Defendant to maintain the status quo while complying with the grievance provisions of the CBA is contrary to well-established federal policy that encourages the use of the grievance procedure to resolve all labor-management disputes.

46. The Union informed Defendant of its intention to seek a status quo injunction.

47.     Defendant has responded by refusing to maintain the status quo during the pendency of the grievance procedure.

48.     The Union served a copy of this Verified Complaint and the accompanying motion, legal memorandum, and proposed orders to counsel for Defendant, Richard Lowe by email and by hand delivery to the Post-Gazette's headquarters in Clinton, Pennsylvania.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter a judgment against Defendant and grant the following relief

      a.    A permanent injunction enjoining and restraining Defendant from refusing to maintain the status quo under the CBA regarding healthcare coverage, manpower, shift scheduling, wages, and layoffs while Plaintiff's grievance remains pending;

      b.    A permanent injunction directing Defendant to maintain the status quo by continuing to provide health insurance to its employees as required by the CBA, maintaining current shift schedules, wages, and staffing levels while Plaintiff's grievance remains pending;

      c.    An award of Plaintiff's reasonable attorneys' fees and costs incurred to bring this action; AND

      d.    Such further relief as the Court deems just and proper.

              Respectfully submitted,

              JUBELIRER, PASS & INTRIERI, P.C.

              BY:    */s/ Joseph J. Pass*
                      Joseph J. Pass, Esquire
                      Pa. I.D. #00044
                      jjp@jpilaw.com

        */s/ Patrick K. Lemon*
        Patrick K. Lemon, Esquire
        Pa. I.D. # 316438
        pkl@jpilaw.com

        219 Fort Pitt Boulevard
        Pittsburgh, PA 15222
        Phone:  412-281-3850
        Fax:  412-281-1985
        Pa. Firm #: 141