IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS, HELPERS, AND HANDLERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 211, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>PG PUBLISHING CO., INC. d/b/a PITTSBURGH POST GAZETTE, <br><br>　　　　Defendant. | 2:19-cv-1472-NR |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

Three days after Thanksgiving, the Pittsburgh Post-Gazette intends to lay off 30 employees and strip another 40 employees of their healthcare coverage. The union that represents these employees has filed a labor grievance, but has asked this Court for emergency relief, to halt the actions of the Post-Gazette temporarily while the parties try to resolve their disputes in private arbitration.

The Post-Gazette, in response, makes variations of the same unsuccessful argument—it argues that this Court has no authority to issue the temporary emergency relief sought by the union. But, under established precedent, this Court has the authority to preserve the status quo in order to protect the parties' rights to arbitrate their labor disputes. As such, the Court finds that it can act here. And given the obvious irreparable harm that many of the affected employees will face in just a few days, the Court grants the union's motion for emergency relief.

# I. BACKGROUND

## A. The collective bargaining agreement.

The Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers, International Brotherhood of Teamsters, Local Union No. 211 (the "Union") is the bargaining representative for a unit of Post-Gazette employees. [ECF 1, at ¶ 2]. The Union and the Post-Gazette entered into a Collective Bargaining Agreement that began on November 7, 2014 (the "CBA"). [*Id.* at ¶ 6; ECF 1-1].

The CBA requires the Post-Gazette to provide health insurance benefits to its employees. [ECF 1-1, at § I(18)]. The CBA also provides that "[a]ny reductions in schedules or routes shall not be permitted to cause a reduction in the number of employees in the Transportation Department." [*Id.* at § III(3)(A)]. Instead, any displaced employees "shall become substitute drivers" [*id.*] and are subject to certain minimum shift and pay requirements [*id.* at § I(16), § IV(2)]. The CBA also establishes an extensive dispute resolution procedure that governs any "dispute over an alleged violation of this agreement." [*Id.* at § I(10)]. This procedure includes the option for either side to initiate arbitration to finally resolve the dispute. [*Id.* at § I(10(D))].

Significantly, the dispute resolution provision also states that, with limited exceptions not relevant to this case, the parties must maintain the status quo while the parties attempt to resolve a grievance. [*Id.* at § at I(10)(H)].

The CBA expired per its durational term on March 31, 2017. [ECF 1, at ¶ 8].

## B. The parties' course of dealing while negotiating a new contract.

On January 9, 2017, the Post-Gazette sent a letter to the Union, notifying the Union of its desire to negotiate a new contract. [ECF 14-1]. In that letter, the Post-Gazette also reminded the Union that the CBA was set to expire on March 31, 2017, but stated that "[w]ith respect to arbitration, [it would] decide its obligation to arbitrate grievances on a case-by-case basis." [*Id.*].

After the CBA expired, the parties engaged in bargaining to reach a new CBA. [ECF 1, at ¶ 7].

On September 11, 2019, the Post-Gazette provided the Union with a proposal seeking to change significant portions of the CBA. [*Id.* at ¶ 17].

On September 30, 2019, the Post-Gazette announced it was "eliminating two days of print and announced the closure of the company's Sharpsburg Distribution Center." [*Id.* at ¶ 18].

On October 1, 2019, the Post-Gazette sent a letter to the Union with the "Company's Best and Final Offer for Effects Bargaining" concerning its planned changes. [*Id.* at ¶ 19]. This letter included proposals for laying off 30 employees, eliminating healthcare benefits for dozens of others, and changing work schedules for still more. [*Id.* at ¶ 20].

After the parties unsuccessfully met and conferred about these proposals, on October 9, 2019, the Post-Gazette sent another communication categorically rejecting all of the Union's proposals of a compromise. [*Id.* at ¶¶ 21-22]. In response, the Union told the Post-Gazette that it believed the Post-Gazette was not bargaining in good faith. [*Id.* at ¶ 24]. Six days later, on October 15, 2019, the Post-Gazette stated its intention to implement the changes it had previously outlined. [*Id.* at ¶ 25].

According to the Union, because "of these unilateral changes, dozens of Union employees will lose their health insurance, dozens of employees will be laid off, dozens of employees will be denied their guaranteed hours of work and corresponding pay, and dozens of employees' shifts will be changed in blatant violation of the terms of the CBA." [*Id.* at ¶ 26]. The healthcare changes would go into effect by no later than December 1, 2019. [ECF 3, at 5].

On November 4, 2019, the Union filed a grievance in accordance with the provisions of the CBA, alleging that the Post-Gazette violated the CBA by announcing its intention unilaterally implement portions of its "Best and Final Offer." [ECF 1, at ¶ 35]. In its grievance, the Union specifically "requested that the Post-Gazette maintain the status quo pending the resolution of the grievance through the grievance procedure." [*Id.* at ¶ 36].

On November 6, 2019, the Union filed an unfair labor practice charge with the National Labor Relations Board (the "NLRB"), asserting that the Post-Gazette "engaged in bad faith bargaining by unilaterally changing the terms and conditions of the parties' agreement." [ECF 1-2, at ¶ 33]. The Union

requested that the charge be withdrawn on November 25, 2019. [ECF 17, at 2].

Since expiration of the CBA, the members of the Union have continued to work pursuant to the CBA. [ECF 11, Molinaro Aff., at ¶ 10]. There have been no strikes or work stoppages since the CBA expired. [*Id.* at ¶ 11]. The Post-Gazette has also continued to comply with the dues check off and union security provisions of the CBA. [ECF 17, Molinero Aff., at ¶ 2]

**C.     The Union's complaint.**

The Union filed its complaint seeking to enforce the grievance procedure in the CBA, including, but not limited to, the requirement that the Post-Gazette maintain the status quo while its grievance is pending. *See generally* [ECF 1]. Simultaneously, the Union filed a motion asking for a preliminary injunction to stop the Post-Gazette from implementing its announced changes. [ECF 2].

The Court held a telephonic status conference in the case on November 13, 2019. On the call, the parties agreed that the Court would decide whether to issue a preliminary injunction on the parties' written submissions alone—no live evidentiary hearing would be held. The Court encouraged the Post-Gazette to file an omnibus opposition to the Union's motion in which it would raise any legal arguments about the Court's exercise of jurisdiction and present factual evidence to rebut the Union's affidavits and documentary submissions. *See* [ECF 4]. Instead, the Post-Gazette moved to dismiss the complaint, arguing, in several different ways, that the Court lacked the authority to hear the case at all. Thus, against the facts alleged by the Union in the complaint and in its motion, along with the documents and multiple witness declarations that the Union submitted, the Post-Gazette presented almost no competing evidence.

Both motions are fully briefed and ripe for disposition.

## II.     STANDARD OF REVIEW

Preliminary injunctive relief is designed to preserve the relative positions of the parties while the merits of a case are explored through litigation. *See J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 273 (3d Cir. 2002). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction

is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The burden of proof is "on the moving party with respect to the first two issues; however, the same is not true of the second two issues." *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003) (citing *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994)). "As a matter of logic, the moving party cannot have the burden to introduce evidence showing the harm that will be suffered by the opposing party if the injunction is issued." *Id.* "[I]f the non-moving party feels it will suffer greater harm or irreparable harm from the injunction, it has the burden to so demonstrate." *Id.*

The standard of review on a motion to dismiss is different. There, the non-moving party must accept all the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. DISCUSSION & ANALYSIS

### A. The Court has subject matter jurisdiction to hear this case.

Before the Court can address the merits of the Union's request for a preliminary injunction, it must first decide whether it has subject matter jurisdiction to hear the case. *See Bond v. State Farm Ins. Co.*, No. 18-176, 2018 WL 5634321, at *1 (W.D. Pa. July 23, 2018) ("Once subject matter jurisdiction is found not to exist, 'the only function remaining to the court is that of announcing the fact and dismissing the case.'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,94 (1998)). The Court finds that it does.

#### 1. Section 301 of the Labor Management Relations Act provides jurisdiction.

Under Section 301 of the LMRA, the Court has jurisdiction to hear contract disputes between a union and an employer. 29 U.S.C. § 185(a) (giving district courts jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization."). The Union here has brought a claim for breach of contract (the CBA's dispute resolution provision) and relies on the plain language of Section 301 to establish this Court's jurisdiction.

The Post-Gazette appears to suggest that because the CBA expired in 2017, there is not a contract in place and jurisdiction is somehow destroyed. [ECF 15, at 5]. This is a peculiar contention since it is devastated by the Post-Gazette's own admission that "the Third Circuit has held that the existence of a contract is not a jurisdictional issue in a Section 301 claim." [*Id.* at 6-7] (citing *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 189 (3d Cir. 2009)). Thus, "[f]or a district court to exercise jurisdiction, … there need not be a valid contract but only a suit for violation of a contract." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 842 (D.C. Cir. 2016).

Everyone agrees that the Union's central claim in this case is that the Post-Gazette has violated and will continue violate the CBA unless enjoined. That is enough to confer subject matter jurisdiction. *See Einhorn v. Penn Jersey Bldg. Materials, Inc.*, No. 12-6891, 2014 WL 1299173, at *2 (D.N.J. Mar. 31, 2014) ("Teamsters first argues that the CBA relied upon by Penn Jersey expired by its terms on April 30, 2008, so Penn Jersey's claims arising out of any alleged breach of that CBA must be dismissed as this Court is without jurisdiction to decide them. However, the existence of a union contract is not a jurisdictional requirement under section 301.").

### 2. The Union's complaint is not preempted.

The Post-Gazette also argues that this Court lacks subject matter jurisdiction because the Union's complaint is subject to preemption under *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). [ECF 15, at 11]. Not so.

In *Garmon*, the Supreme Court explained that "[c]ourts are not primary tribunals to adjudicate [National Labor Relations Act] issues." 359 U.S. at 244. The reason being that "[i]t is essential to the administration of the [NLRA] that these determinations be left in the first instance to the [NLRB]." *Id.* at 244-45. The Post-Gazette claims that the "conduct challenged in this case … is arguably protected by Section 7 or prohibited by Section 8 of the NLRA, and is therefore preempted." [ECF 15, at 13]. The Post-Gazette's argument misses the mark.

The rights the Union seeks to enforce here differ from those it would seek to enforce under the NLRA. As discussed below, in this case, the Union seeks to enforce a right under an implied-in-fact contract between the parties. As the Third Circuit has recognized, such a claim is fundamentally different from

any claim the Union could pursue with the NLRB for the Post-Gazette's failure to comply with its "statutory or legal duty" to bargain in good faith under Section 8(d) under the NLRA. *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary and Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 363-64 (3d Cir. 1994). One sounds in contract, the other sounds in federal law. "The *Garmon* preemption doctrine is simply 'not relevant' where there is a claim under [S]ection 301 asserting a breach of the collective bargaining agreement." *Local Union No. 884 v. Bridgestone/Firestone, Inc.* 61 F.2d 1347, 1356 (8th Cir. 1995) (internal marks and citation omitted).[1]

*Garmon* preemption is inapplicable.

**B.     The Union is entitled to emergency relief.**

   **1.     The Court has the authority to issue the Union's requested injunction.**

The Norris-LaGuardia Act states that "[n]o court of the United States, … shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute…." 29 U.S.C. § 101. "The Supreme Court created a narrow exception to this general prohibition, however, where the involvement of the federal courts is necessary to further another fundamental federal labor policy—that of encouraging and promoting the voluntary resolution of labor disputes through arbitration." *Nursing Home & Hosp. Union v. Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1098 (3d Cir. 1985) (citing *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970)). This is known as the *Boys Markets* exception and it "deals only with the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure." *Boys Markets*, 398 U.S. at 253.

Although *Boys Markets* "arose in the context of objectionable union conduct, numerous courts have found that the rationale of those cases is equally applicable to cases where a union seeks to enjoin employer conduct." *Sky Vue*, 759 F.2d at 1098 (collecting cases); *see also Indep. Oil Workers Union*

---

[1]     At worst, in cases like this when a party's conduct could conceivably give rise to "both a charge of an unfair labor practice and a claimed breach of a collective bargaining agreement, the NLRB and the district court share concurrent jurisdiction." *Bridgestone,* 61 F.2d at 1356 (citing *William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 18 (1974)).

- 7 -

*v. Mobil Oil Corp.*, 777 F. Supp. 391, 393 (D.N.J. 1991) ("We are … permitted to enjoin employer actions in order to preserve the status quo in aid of arbitration.").

Thus, under Third Circuit precedent, to establish that an order enjoining employer conduct is necessary in this case, the Union must prove two things: (1) that the underlying disputes are subject to a mandatory grievance or arbitration procedure; and (2) "the traditional requirements of injunctive relief—probability of success on the merits, irreparable injury, and a balance of hardships—support the award." *Sky Vue*, 759 F.2d at 1098. The Union has met its burden.

### 2. The underlying dispute is subject to the CBA's mandatory grievance procedure.

As a threshold matter, the Post-Gazette contests whether a valid contract with the Union even exists. [ECF 15, at 1]. The Post-Gazette argues that the CBA is expired and "once a collective bargaining agreement expires, the agreement is no longer considered a contract…." [*Id.* at 5]. And, if the CBA is no longer a valid contract, the Post-Gazette, by definition, cannot be subject to its grievance procedure.

The Union concedes, as it must, that the CBA expired before its suit. [ECF 1, at ¶ 8]. But the Union says that is irrelevant because the parties have an "implied-in-fact-CBA" that arose by virtue of the parties' conduct after the lapse of the expired CBA. [ECF 11, at 6] (citing *Luden's*, 28 F.3d at 353). That implied-in-fact-CBA contains the same grievance procedure as outlined in the CBA and covers this dispute. The Court agrees.

As the Third Circuit explained in *Luden's*, "general principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct that it no longer wishes to continue to be bound thereby, or both parties mutually intend to the terms not survive."[2] 28 F.3d at 355. The reason for this rule is that "when

---

[2] The Post-Gazette attempts to distinguish *Luden's* by arguing that it is "not applicable" because "this is not an action to compel arbitration." [ECF 15, at 7]. But functionally, this case is no different from *Luden's*. The Union is asserting a claim for breach of contract—specifically, breach of the dispute

parties to an ongoing, voluntary contractual relationship…continue to behave as before upon the lapse of the contract, barring contrary indications, each party may reasonably expect that the lapsed agreement's terms remain the ones by which the other party will abide."[3] *Id.*

The Post-Gazette argues that its January 9, 2017, letter to the Union "evidenced a 'clear, particularized intent' to disavow the terms of the [CBA] after it expired by saying that '[a]t that time, all contractual obligations of the current Agreement shall expire.'" [ECF 15, at 8]. This letter is far from a "clear and particularized" disavowal of the CBA. In the very next paragraph of the letter, the Post-Gazette incongruously states that "the Company will decide its obligation to arbitrate grievances"—a contractual requirement under the CBA—"on a case-by-case basis." [ECF 14-1]. If the Post-Gazette were truly disavowing all contractual obligations under the CBA, it would have simply said it would not be bound by the arbitration provision in the CBA under any circumstances.

What's more, after it sent the letter, the Post-Gazette does not dispute that it continued to comply with two other purely contractual obligations: the dues check-off and union security provisions. [ECF 17, Molinero Aff., at ¶ 2]; *see also Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 199 (1991) ("For instance, it is the Board's view that union

---

resolution provision, which includes a right to arbitration. The Union is asking the Court for an injunction to enforce that entire provision, including the portion regarding arbitration. That is essentially the same as asking the court to compel arbitration. Importantly, the Union could not even style its motion as one to compel arbitration because it is still mired in earlier stages of the grievance resolution process under the CBA.

[3]   The Post-Gazette's argument that *Luden's* is incompatible with the Supreme Court's recent decisions in *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015) and *CNH Industrial N.V. v. Reese*, 138 S.Ct. 761 (2016) is off base. [ECF 15, at 9-10]. Both those cases involved the continuation of retiree benefits, which are not at issue here. More broadly, the Post-Gazette contends that those cases stand for the proposition that there must be some "evidence that the parties intended the status quo provision … to survive the [CBA's] expiration." [*Id.* at 10]. There is such evidence here; the parties are currently in the midst of resolving a grievance filed under the CBA [ECF 1, at ¶¶ 35-36] and the Post-Gazette has indicated its willingness to arbitrate certain disputes under the CBA [ECF 14-1].

- 9 -

security and dues check-off provisions are excluded from the unilateral change doctrine because of statutory provisions which permit these obligations only when specified by the express terms of a collective-bargaining agreement.").

For its part, the members of the Union have continued to work pursuant to the CBA. [ECF 11, Molinaro Aff., at ¶ 10]. It is undisputed that there have been no strikes or work stoppages since the CBA expired. [*Id.* at ¶ 11]. The Union has never suggested eliminating the grievance procedure in the CBA; quite the opposite, the Union took the necessary first step towards arbitration by filing a grievance in accordance with Section I(10) of the CBA. [ECF 17, at 3]. These facts are uncontested by the Post-Gazette.

At this stage, the Post-Gazette has offered no credible evidence to adequately rebut the Union's contention that an implied-in-fact-CBA exists. A single sentence, read in isolation, from a letter sent over two years ago simply does not cut it. The Court gave the Post-Gazette a chance to offer additional testimony and documents to rebut the Union's claims by encouraging the Post-Gazette to file an opposition to the Union's preliminary injunction motion. It chose not to—instead opting to file a motion to dismiss and accept as true all of the Union's factual allegations. The Court finds, on this record, that an implied-in-fact-CBA exists, containing the "Grievance and Arbitration" provision in Section I(10) of the CBA.

That provision broadly governs any "dispute over an alleged violation of this agreement." [ECF 1-1, at § I(10)(A)]. "Because of the strong federal policy in favor of arbitration, … an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sky Vue*, 759 F.2d at 1097 (internal marks and citations omitted).

Here, there is a dispute regarding the Post-Gazette's plan to upset the status quo in violation of Section I(10)(H) by cutting off health insurance for dozens of employees, laying off others, and denying guaranteed hours of work and corresponding pay for some. [ECF 1, at ¶¶ 25-27]. This dispute is covered by the grievance provision and is subject to arbitration at the request of either party under Section I(10)(D). *See United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting, Div. of Conval-Penn, Div. of Conval Corp.*, 598 F.2d 1273, 1279 (3d Cir. 1979) (holding it was "beyond dispute" that a collective bargaining agreement's arbitration clause, which stated grievance procedures were to be used with regard to "any request or complaint," covered a "dispute which led to [the employer's] threat to terminate premium payments—whether

the [u]nion was obligated to reimburse the [employer] for health and insurance plan contributions made during [a] strike.").

### 3. The Union has satisfied the traditional requirements for injunctive relief.

The party seeking a preliminary injunction must show "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004).

The Post-Gazette's briefing here offers no defense to the Union's arguments and evidence regarding the preliminary injunction factors. Thus, the Court will consider this portion of the Union's motion unopposed. *See AVCO Corp. v. Turn & Bank Holdings, Inc.*, No. 12-1212, 2015 WL 435008, at *2-3 (M.D. Pa. Feb. 3, 2015) ("[S]ince the motion offered no defense to [plaintiff's] motion but rather only introduced collateral issues…, it cannot constitute a substantive opposition" and plaintiff's "Motion for a Preliminary Injunction will be deemed unopposed").

Even so, the Court will not simply "accept [the Union's] arguments without qualification and grant its motion without review. Rather, this Court will still evaluate [the Union's] facts and arguments within the context of the controlling law to determine whether an injunction is warranted and desirable." *Id.* Based on its evaluation, the Court finds that an injunction is warranted here.

#### (a) The Union is likely to succeed on the merits.

In the CBA, the Post-Gazette agreed to maintain the status quo while a grievance is pending final resolution:

> ***During the processing of any grievance, business shall be continued without interruption in a normal and orderly manner and the matter or matters in dispute***, except cases of layoff for reasons of economy or cases of discipline resulting from a serious offense ***shall revert to the status quo prevailing immediately prior to the time the grievance arose until a final decision of the matter or matters at issue shall have been reached.***

- 11 -

[ECF 1-1, at § I(10)(H)] (emphasis added). "The Union filed its grievance on November 4, 2019, contending that the Post-Gazette violated multiple provisions of the CBA" by its intention to implement unilaterally sweeping changes to the CBA. [ECF 3, at 8]. The Post-Gazette has "refused to maintain the status quo" and plans to implement these changes despite the Union's grievance still being pending. [ECF 3-2, at ¶ 26]. If true, and, again, the Court has no reason to believe that it is not, the Union is likely to ultimately succeed on the merits of its claims in the complaint.

### (b) The Union will suffer irreparable harm without an injunction.

A party seeking an injunction must show that, "absent the issuance of the preliminary injunction, [it] will suffer harm that cannot be sufficiently redressed following a trial on the matter." *Acierno*, 40 F.3d at 655. Put simply, irreparable harm is injury that cannot adequately be compensated by monetary damages. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

The Union and its members will be irreparably harmed by, at a minimum, the elimination of health insurance coverage for dozens of workers if the status quo is not maintained. *See, e.g.*, *Fort Pitt Steel*, 598 F.2d at 1280 ("If the risk of 'water pipes freezing' can constitute irreparable injury, then surely the possibility that a worker would be denied adequate medical care as a result of having no insurance would constitute 'substantial and irreparable injury.'"); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Exide Corp.*, 688 F. Supp. 174, 187 (E.D. Pa. 1988) ("I am convinced that irreparable harm exists in this case as a result of the drastic reduction in health insurance benefits … implemented by the company."), *aff'd*, 857 F.2d 1464 (3d Cir. 1988).

### (c) Preliminary injunctive relief will not result in greater harm to the Post-Gazette.

For this factor, the question is whether, and to what extent, "the defendants will suffer irreparable harm if the preliminary injunction is issued." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). All that the Post-Gazette is being asked to do is to maintain the status quo that has been in place for many years. While this may require the Post-Gazette to expend money, time, and energy, this harm could be

compensated by money damages. *See Exide*, 688 F. Supp. at 190. That potential harm pales in comparison to the harm that will be suffered by the Union because of the "potential lack of adequate medical care and resulting risk to its members' health" if injunctive relief is not granted. *Id.* at 191.

### (d) Public interest favors granting injunctive relief.

Federal public policy favors arbitration of labor-management disputes because the quick resolution of labor disputes promotes and encourages industrial peace. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960) ("The present federal policy is to promote industrial stabilization through the collective bargaining agreement. A major factor in achieving industrial peace is the inclusion of a provision of grievances in the collective bargaining agreement.").

A preliminary injunction maintaining the status quo pending resolution of the Union's grievance advances that public interest by honoring the terms of the parties' CBA and ensuring that the process will not be frustrated. The arbitral processes are frustrated "when the arbitrator's award is nor more than 'a hollow formality' because 'when rendered it could not return the parties substantially to the status quo ante.'" *Fort Pitt Steel*, 598 F.2d at 1282 (quoting *Lever Bros. Int'l Chem. Workers, Local 217*, 554 F.2d 115, 123 (4th Cir. 1976)). If any of the "Union members suffered irreparable injury to their health as a result" of the termination of their healthcare benefits, any future arbitrator's award for breach of Section I(10)(H) of the CBA "would indeed be only 'a hollow formality.'" *Id.*

All four factors support granting the Union's Motion for Preliminary Injunction and ordering the Post-Gazette to maintain the status quo while the Union's grievance is pending.

### C. The Union shall post a nominal bond.

Federal Rule of Civil Procedure 65(c) states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "The amount of security required for an injunction under Rule 65(c) is left to the discretion of the district court." *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 177 (3d Cir. 2003).

Neither party briefed the issue of the amount of the bond that should be ordered in this case. This failure though is more significant for the Post-Gazette because the purpose of the security requirement is to "provide[] a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989). Because the Post-Gazette "did not offer any evidence that they will suffer a financial loss as a result of the injunction," the Court "will require [the Union] to post a nominal bond of $100 before the preliminary injunction will issue." *Am. Freedom Def. Initiative v. Se. Pa. Transp. Auth.*, 92 F. Supp. 3d 314, 331 (E.D. Pa. 2015).

## IV. CONCLUSION

For all the reasons discussed above, the Union's Motion for Preliminary Injunction [ECF 2] will be **GRANTED** and the Post-Gazette's Motion to Dismiss [ECF 14] will be **DENIED**. An appropriate order follows.

DATED this 27th day of November, 2019.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge