IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEWSPAPER, NEWSPRINT, MAGAZINE AND FILM DELIVERY DRIVERS, HELPERS, AND HANDLERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 211, | ) ) ) ) ) ) ) | |
| | ) | Civil Action No. 2:19-cv-1472 |
| Plaintiff, | ) ) | |
| v. | ) | Judge J. Nicholas Ranjan |
| | ) ) | |
| PG PUBLISHING CO., INC. d/b/a PITTSBURGH POST GAZETTE, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION TO STAY PENDING APPEAL**

I.       INTRODUCTION

Defendant Pittsburgh Post-Gazette ("Post-Gazette") submits this reply brief to counter

directly the arguments in the memorandum filed by plaintiff Newspaper, Newsprint, Magazine

and Film Delivery Drivers, Helpers, and Handlers, International Brotherhood of Teamsters,

Local Union No. 211 ("Union"), opposing the Post-Gazette's motion to stay.

II.      ARGUMENT

A.       The Court Can Consider The Post-Gazette's Evidence And
         Arguments Submitted In Support Of Its Motion To Stay

The Union erroneously argues that the Post-Gazette may not offer evidence and

arguments in support of its motion to stay that were not raised on its motion to dismiss.  [*See*

ECF No. 25 at p. 3-4].  Courts consider evidence and arguments, not raised in the order being

appealed, when analyzing a motion to stay pending appeal.  *See U.S. v. Bell*, No Civ. 1CV-01-

2159, 2003 WL 22078003, at *1 (M.D. Pa. Apr. 1, 2013) (denying motion for stay where

moving party "fails to present any new evidence or new argument" demonstrating that it will

prevail on appeal); *Aviles v. Quick Pick Express, LLC,* Case No. CV-15-5214, 2015 WL

5601824, at *6 (C.D. Cal. Sept. 23, 2015) (inviting parties to submit "additional evidence and

briefs" when analyzing a motion stay).  Simply stated, the allegations of the Complaint had to be

accepted as true for purposes of the Post-Gazette's motion to dismiss, but not for purposes of

deciding on the grant of a stay.

      The Post-Gazette's arguments addressed to the reasoning in the Court's Memorandum

Opinion are proper because a motion to stay pending appeal requires the moving party to

persuade that it will "likely prevail on [the] merits" of its appeal challenging the underlying

order.  *See Harris v. Pernsley*, 654 F.Supp. 1057, 1059 (E.D. Pa. 1987).  The Post-Gazette's

submission of evidence about layoffs (and corresponding severance payments) and schedule

changes that had already occurred and the parties' bargaining history is proper because it informs

on the scope of conduct affected by the Court's preliminary injunction order.

      B.      The Union Has Failed To Demonstrated That The Post-Gazette Is
               Unlikely To Prevail On The Merits Of Its Appeal

           1.     The Union argument that *Luden's* controls or was
                    properly applied in this case is not correct.

      This is the critical point.  The Union argues the Post-Gazette will not succeed on appeal

because (1) the Court properly found an implied-in-fact collective bargaining agreement under

*Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary and Tobacco Workers'*

*International Union of America*, 28 F.3d 347 (3d Cir. 1994), and (2) the Post-Gazette "never

specifically repudiated or disavowed" the arbitration provisions in the expired Agreement.  [*See*

ECF No. 25 at p. 9-10].  Neither of these propositions are correct, and because they are not, no

implied-in-fact contract arose and no basis for an injunction exists.

      First, the Court found an "implied-in-fact CBA" because the Post-Gazette did not

completely disavow any post-expiration obligation to arbitrate, because it continued to comply

with dues check-off provisions and apparently also because it continued to process grievances.

[ECF No. 19 at p. 8-10].  But, as pointed out in the Post-Gazette's brief supporting its stay

motion, the Post-Gazette's actions in these respects after its contract with the Union expired on

March 30, 2017 were compliant with National Labor Relations Act ("NLRA") requirements.  If

it had totally disavowed arbitration, refused to check off union dues or declined to process

grievances, then it would have committing an unfair labor practice, violating Section 8 of the

NLRA.  *See Lincoln Lutheran of Racine*, 362 NLRB 1655 (2015) (employer is obligated to

continue dues checkoff after expiration of a collective bargaining agreement establishing that

arrangement); *Ind. & Mich. Elec. Co.*, 284 NLRB 53, 58-59 (1987) (employer may not disavow

arbitration on an across-the-board basis after a collective bargaining agreement expires, but must

process grievances and determine whether grievances should be arbitrated based on the

individual facts presented in the grievances); *Hilton-Davis*, 185 NLRB at 242 (an employer must

process grievances after the expiration of a collective bargaining agreement, but need not

arbitrate the grievances unless they arose under the expired agreement). The Union misled the

court on this point.  In its memorandum opposing the Post-Gazette's motion to dismiss, it said:

> Further proof exists, consistent with *Luden's*, that the parties have
> an implied-in-fact contract in that not only did the employer agree
> that the arbitration was going to continue but at least two other
> provisions not statutorily required, the dues check off and the
> union security provisions, have been adhered to.

[ECF No. 17 at p. 5 (emphasis added)].  The Union's veteran counsel, who has practiced in this

field for many years, was fully aware that in these areas[1] the Post-Gazette was complying with

---

[1]      The Post-Gazette has continued to check off dues, but has not in any respect continued
the union security clause because doing so is prohibited.  A union security clause does not
survive expiration of a collective bargaining agreement and enforcing it after expiration violates

3

NLRA requirements.  Conspicuously absent from the Union's memorandum is any effort to

address this issue as corrected by the Post-Gazette.  [*See* ECF No. 25 at p. 9-10].  The Union did

not address the issue because it cannot.  The Post-Gazette has correctly recited the law on these

issues.

Applying *Luden's* to find a wholesale implied-in-fact agreement based on compliance

with NLRA legal requirements is flawed.  In *Teamsters Local Union No. 122 v. August A. Busch*

*& Co.*, 932 F.Supp. 374, 380 (D. Mass. 1996), the court analyzed *Luden's* and rejected the

union's argument that an "implied-in-fact" agreement existed because the parties continued to

work under the terms of an expired agreement and held that:

> post expiration conduct in the context of collective bargaining
> occurs within a very different legal paradigm [in comparison to
> typical contract formation]. … Because an employer is legally
> required [under the NLRA] to observe terms of the expired
> contract, it cannot be fairly said that his conduct constitutes an
> implicit agreement to those terms.

*Id.* at 380; *see also Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199*, 107

F.Supp. 2d 222, 225-26 (S.D. N.Y. 2000) (maintaining the *status quo ante* under the NLRA does

not create an "implied-in-fact" agreement under *Luden's* analysis).

Second, the court in *Luden's* limited its implied-in-fact contract holding to just the

arbitration clause and said that the "[NLRB's] primary jurisdiction over unfair labor practices

also counsels against the inclusion in an implied-in-fact CBA of a term or condition which is a

member of the group of items subject to mandatory bargaining but not subject to a party's

---

the NLRA.  *See Peerless Roofing Co., L.T.D.*, 247 NLRB 500 (1980) ("It is clear that the union-security clause, which required union membership as a condition of employment, did not survive the contract" and disavowing the union security clause is "acting in accordance with the mandate of the Act").  The Post-Gazette's January 9, 2017 letter to the Union disavowed any intention to adhere to the expired Agreement, including its union security clause.

unilateral modification." 28 F.3d at 362. The terms of a grievance procedure in a collective

bargaining agreement are a mandatory subject of bargaining. *See NLRB v. Haberman Const.*

*Co.*, 618 F.2d 288, 303 (5th Cir. 1980) ("grievance procedures" are mandatory subjects of

bargaining); *Healthcare Workers Union, Local 250*, 321 NLRB 382 (1996) (same). Here, the

"status quo" provision was part of the grievance procedure in the expired agreement. [ECF

No.1-1, Section I(10)(H)]. So, the "status quo" provision which is the basis for the Union's

injunction request is exactly the type of provision that *Luden's* said should <u>not</u> become part of

any implied-in-fact contract. If it is not part of an implied contract, then it expired long ago and

cannot be the basis for an injunction. Beyond that, this status quo provision is being used as the

tool to obtain injunctive relief on other mandatory subjects of bargaining – layoffs, workloads,

and health insurance. *See Hilton Mobile Homes*, 155 NLRB 873 (1965) (layoffs and recall

procedures are mandatory subjects of bargaining); *Pac. Beach Hotel*, 356 NLRB 1397 (2011)

(workloads are a mandatory subject of bargaining); *Standard Oil Co.*, 92 NLRB 227 (1950)

(health and wellness programs are a mandatory subject of bargaining).

Third, the application of *Luden's* in this case is flawed insofar as the Court determined

that the Post-Gazette's January 9, 2017 letter to the Union was insufficient to disavow existence

of an "implied-in-fact" agreement. In *August A. Busch*, as in this case, the employer informed

the union that it would consider arbitrating grievances "on a case-by-case," after the expiration

of the parties' agreement. 932 F.Supp. at 381. The court held "[e]ven under *Luden's* approach,

the court concludes that this letter effectively served notice to the Union that [the employer]

disavowed any obligation to submit post expiration disputes to arbitration." *Id.* at 381 n.7; *see*

*also Deutsche Fin. Serv. Corp. v. BCS Ins. Co.*, 299 F.3d 692 (8th Cir. 2002) (a party disavowed

an "implied-in-fact" agreement under *Luden's* where it "clearly and manifestly indicated through

its notice of termination letter that it no longer wished to be bound by the [agreement]");

*Kellhoffer v. Columbus S. Power Co.*, 192 Fed.Appx. 383, 386 (6th Cir. 2006) (an employer

disavowed an "implied-in-fact" agreement under *Luden's* where it informed the union that "there

was no labor contract in effect because the 2000-2003 labor contract had expired" and "that

because no contract was in effect, [the employer] would not agree to arbitrate any cases").  The

Post-Gazette's January 9, 2017 letter to the Union was framed in the very same manner as the

communications in these cases, found sufficient to preclude application of *Luden's*.  These cases

are consistent with the requirement of *Indiana & Michigan Electric Co.* – following that legal

requirement does not create an implied-in-fact contract.

Based on the above, whether an arbitrable dispute exists is very much in question.  If no

implied-in-fact contract arose, then no automatic duty to arbitrate exists and the issue of whether

the grievance filed here long after expiration of the parties' written contract is arbitrable depends

on whether it "arose under" the expired contract.  *See Litton Fin. Printing Div., a Div. of Litton*

*Bus. Sys. v. NLRB*, 501 U.S. 190, 205-06 (1991).  The Post-Gazette does not concede that a

grievance filed on November 4, 2019 concerning events in the Fall of 2019 "arose under" the

contract that expired at the end of March 2017.  To hold such a grievance arbitrable based on an

implied contract is, in at least one respect, to turn the Post-Gazette's efforts to properly disavow

an automatic obligation to arbitrate post-expiration back upon it.  The Post-Gazette's January 9,

2017 letter disavowing the continuation of contract terms and the obligation to arbitrate all

grievances, which other courts have ruled precludes contract creation under *Luden's*, becomes

the lever to create an implied-in-fact contract that requires the Post-Gazette to do exactly what it

communicated it would not – arbitrate all post-expiration grievances.

6

2.      The Union's request for an injunction based on a
        contractual theory does not exempt the claim from
        *Garmon* preemption.

The Union argues that its injunction request is not preempted by *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), because (1) it seeks to enforce contractual rights, not rights protected by the National Labor Relations Act ("NLRA"), and (2) the parties were not at impasse when the Post-Gazette implemented its "effect bargaining" proposals. [*See* ECF No. 25 at p. 5-6].

The fact that a case is brought as a breach of contract action does not exempt the claim from *Garmon* preemption. *See Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 292 (1971) ("the proposition that [plaintiff's] complaint was not subject to the exclusive jurisdiction of the NLRB because it charged a breach of contract rather than an unfair labor practice is not tenable.  Pre-emption … is designed to shield the system from conflicting regulation of conduct.  It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern").  That principle applies here – although the Union brought a contractual claim, the conduct it seeks to regulate by injunction is bargaining conduct, carried out subject to the requirements of Section 8 of the NLRA.

In *Newspaper Guild of Salem v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1283-84 (1st Cir. 1996), a case closely resembling this matter, the union brought a breach-of-contract claim based on an expired contract and sought to enjoin the employer from laying off employees.  The court concluded that union's true allegations were bad faith bargaining.  *Id.*  Thus, it held that the union's claim was subject to *Garmon* preemption and said:

> To hold otherwise would permit the Guild to style what is in
> essence an unfair labor practice claim as a Section 301 claim in
> order to get contract renewal issues, including the issue of impasse,
> before an arbitrator.

* * *

> Here, the gravamen of the Guild's complaint is that the employer bargained in bad faith, unlawfully reached impasse, and unlawfully undermined the Guild's representational status. These issues fall squarely within the NLRB's primary jurisdiction.

*Id.* at 1284 -85.

The Union's allegations here that the Post-Gazette "refused to negotiate . . . in violation of the [NLRA]" and was effecting changes despite "failure to engage in good faith bargaining" similarly evidences that the Union is trying to frame as contractual violations and thus enjoin conduct that is squarely within the unfair labor practice jurisdiction of the National Labor Relations Board. [*See* ECF No. 1, ¶¶ 17-26]. The Union's further assertions that "[d]espite Defendant's assertions to the contrary, the parties have not reached impasse" and that the Post-Gazette was "going through hollow motions masquerading as bargaining [that do] not amount to impasse" are allegations of bad faith bargaining. [ECF No. 25 at p. 6]. They confirm that the Union's claims are subject to *Garmon* preemption, as does the Union's failure to address the Post-Gazette's argument that the Court's injunction restricts its NLRA right to bargain to impasse and implement. [*See* ECF No. 25 at p. 5-6]. Moreover, the Union says in its brief that it could not seek an injunction to preserve "the status quo of the parties' relationship" while its grievance is processed. [ECF No. 25 at p.6]. But, it could file an unfair labor practice charge with the NLRB, asserting that changes in the status quo constitutes bargaining in bad faith, and the NLRB's unfair labor practice jurisdiction includes the right to seek injunctive relief. *See* 29 U.S.C. § 160(j).

        3.     The Court's injunction is unclear because it does not set forth what the "status quo" is between the parties.

The Union argues that the injunction order requires "returning to the state of affairs

between the Union and Defendant <u>before</u> Defendant's actions that gave rise to the underlying grievance," including reinstating all laid-off individuals and undoing schedule changes. [ECF No. 25 at p. 10 (emphasis added)]. However, the injunction order does not state what the "status quo" is, nor does it explicitly order the relief the Union believes it is entitled to. [*See* ECF No. 20]. On the date the Court issued the injunction order, the layoffs and schedule changes had already occurred. [ECF No. 22, Ex. 1 (Lowe Decl.) at ¶ 38]. Therefore, it is unclear if the injunction is aimed at (1) enjoining the Post-Gazette's announced health care changes that would have been a direct effect of the previously-reduced work hours, (2) the previously implemented layoffs (and payment of severance pay) and changed work schedules, or (3) both.

C.     The "Irreparable Harm" Factor Favors Granting The Stay

The Union argues it will suffer "irreparable harm" if the stay is issued because its members will lose health insurance coverage, "their very livelihood," and that granting the stay "would be counterintuitive and logically inconsistent" with the Court's injunction order.[2] [*See* ECF No. 25 at p. 12-14].

The Union's argument is without merit because the Post-Gazette has taken steps to continue health insurance for the impacted employees in compliance with this Court's injunction. The Union's reliance on *F.T.C. v. Equitable Resources, Inc.*, No. 07-CV-0490, 2007 WL 1500046 (W.D. Pa. May 21, 2007) in support of its "counterintuitive" argument is misplaced because the issuance of a stay in that matter would have "killed a merger," resulting in lost service for 600,000 power customers, which could never be satisfied through monetary damages.

---

[2]     The Union asserts that the Post-Gazette will not suffer irreparable harm by reinstating laid-off individuals who would have no work to perform because "much work is being left undone since the improper layoffs." [ECF No. 25 at p. 12]. The Union's argument is not supported by record evidence. [*See id.*]. Likewise, the Union's claim that layoffs were not "voluntary" because "[n]ot a single Union member would have left if not for Defendant's announced layoffs" is not supported by record evidence. [*See id.*].

*Id.* at *7-8.  Here, the Union and its members can be made whole through monetary damages from the NLRB if it ultimately succeeds on an unfair labor practice charge.

In contrast, the Post-Gazette will face "irreparable harm" if the injunction is not stayed because it may be forced to reinstate laid-off employees to jobs that no longer exist.  If the injunction is later reversed, the Posts-Gazette will not be able to recover damages for the wages paid, despite the individuals having no work to perform.

III.    CONCLUSION

The Post-Gazette respectfully requests the Court stay its November 27, 2019 Order [ECF No. 20] pending appeal, retroactive to the date the Order was issued or its effective date.

Respectfully submitted,

By:  */s/ Brian M. Hentosz*
Terrence H. Murphy, PA ID No. 36356
tmurphy@littler.com

Brian M. Hentosz, PA ID No. 317176
bhentosz@littler.com

LITTLER MENDELSON, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Ph:  412.201.7621/7676
Fax:  412.291.3373

Attorneys for Defendant
*PG Publishing, co., Inc. d/b/a*
*Pittsburgh Post-Gazette*

Dated:  December 13, 2019

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December 2019 a true and correct copy of the foregoing Reply Brief in Support of Defendant's Motion to Stay Pending Appeal was served and filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Joseph J. Pass
jjp@jpilaw.com
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

Patrick K. Lemon
pkl@jpilaw.com
219 Fort Pitt Boulevard
Pittsburgh, PA 15222

By: */s/ Brian M. Hentosz*